Cause No.    04-17-00722-CR

_____

IN THE FOURTH COURT OF APPEALS

FOR THE STATE OF TEXAS

_____

IN RE BENJAMIN ELIAS

_____

APPLICATION FOR WRIT OF MANDAMUS

_____

In Trial Cause No. 427052

Writ No. 2704

from the

Twelfth County Court of Law

for Bexar County, Texas.

_____

Benjamin Elias, pro se
TDCJ-ID No. 819778
O.B. Ellis Unit
1697 FM 980
Huntsville, Texas 77343.

## IDENTITY OF PARTIES AND COUNSEL

RELATOR:                    Benjamin Elias

      Counsel:             Pro se

      Mailing Address:    O.B. Ellis Unit

                        1697 FM 980

                        Huntsville, Texas 77343.


RESPONDENT:              Scott Roberts

      Counsel:             Unknown

      Mailing Address:    Justice Center

                        300 Dolorosa, 2nd Fl.

                        San Antonio, Texas 78205-3005.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL     iii.

INDEX OF AUTHORITIES     v.

STATEMENT OF CASE     1

STATEMENT OF JURISDICTION     2

ISSUES PRESENTED     2

STATEMENT OF FACTS     3

ARGUMENT     4-5

PRAYER     5

CERTIFICATION     6

APPENDIX     7-40

     EXHIBIT 1     8

        Relator's Original Writ of Habeas Corpus with Certified

        Mail Card and Return Receipt     9-37

     EXHIBIT 2     38

        Letter of Inquiry to Respondent with Certied Mail Card

        and Return Receipt     39-40

## INDEX OF AUTHORITIES

Texas Code of Criminal Procedure, Article 11.10                4

Texas Code of Criminal Procedure, Article 11.11                4

Texas Rules of Appellate Procedure, Rule 52                    2

Texas Rules of Appellate Procedure, Rule 52.1                  2

Texas Rules of Appellate Procedure, Rule 72.1                  2

## STATEMENT OF CASE

On May 16th, 2017, Relator filed an <u>Application for Writ of Habeas Corpus</u> with the Twelfth County Court of Law for Bexar County regarding constitutional violations resulting from a driving while intoxicated prosecution. State v. Elias, Cause No. 427052 (12th Cty Ct., Bexar Cty. Tex., June 13, 2014). See Appendix, Exhibit 1, <u>Application for Writ of Habeas Corpus</u>, Procedural History, pp. 1-2. The Bexar County Clerk received said application and assigned it Writ No. 2704. The presiding judge has not set a date for hearing or ruled on said writ.

Relator is currently confined to the Texas Department of Criminal Justice Institutional Division at the O.B. Ellis Unit in Walker County, Huntsville, Texas. He is unlawfully restrained of his liberty as a collateral consequence to the above-referenced misdemeanor charge and has been since May 2013. At the time said charge was filed, Relator was on parole for an unrelated case. See State v. Elias, Cause No. 970D11232, 243rd Judicial District Court of El Paso County, Texas, final judgment April 18, 2001. As a collateral consequence of said misdemeanor DWI, he was arrested and confined. Relator is currently confined due to his subsequent parole revocation.

Respondent, Honorable Judge Scott Roberts, has not set a date for hearing nor ruled on said writ. Mr. Roberts is the presiding judge for the Twelfth County Court of Law for Bexar County, Texas. He was the presiding judge at Relator's trial and is the current judge for the Twelfth County Court of Law. By delaying a hearing, he is in fact prolonging Relator's confinement.

## STATEMENT OF JURISDICTION

Pursuant to Texas Rules of Appellate Procedure, Rule 72.1, Relator is required to file an **Application for Leave to File Writ of Mandamus** in order for the court of appeals to exercise original jurisdiction. Relator submitted said application with this original petition for writ of mandamus.

Further, this **Application for Writ of Mandamus** complies with the stiplulations set forth by Rule 52 of the TRAP regarding form and content. Rule 52.1, states:

"An original appellate proceeding seeking extraordinary relief—such as a writ of habeas corpus, mandamus, prohibition, injunction, or quo warranto is commenced by filing a petition with the clerk of the appropriate appellate court..."

The Fourth Court of Appeals has original jurisdiction over cases originating in Bexar County and therefore conferred jurisdiction to rule on this writ of mandamus.

## ISSUES PRESENTED

Respondent's failure to conduct a hearing regarding Relator's writ of habeas corpus in a timely fashion.

2

## STATEMENT OF FACTS

1) Relator was convicted of DWI in Respondent's court on June 13th, 2014. See Cause No. 427052, The State v. Elias, Twelfth County Court of Law for Bexar County, Texas.

2) On July 9th, 2014, the Texas Board of Pardons and Paroles revoked Relator's parole for an unrelated case as a result of said DWI conviction. See State v. Elias, Cause No. 970D11232, 243rd Judicial District Court of El Paso County, Texas, final judgment, April 18, 2001; Violation Report No. 10775503.

3) Relator filed a direct appeal to the Fourth Court of Appeals. See Cause No. 04-14-00498-CR. Relator's conviction was affirmed on June 3, 2015.

4) Relator filed a Petition for Discretionary Review with the Texas Court of Criminal Appeals. The Court issued an order refusing discretionary review on February 10, 2016. See Elias v. State, PD-0820-15.

5) Relator submitted his Application for Writ of Habeas Corpus with the Bexar County Clerk on May 16th, 2017. See Appendix, Exhibit 1.

6) Relator submitted a letter of inquiry certified mail, return receipt requested on July 31, 2017, to Respondent inquiring into the status of his application for writ of habeas corpus. See Appendix, Exhibit 2.

7) To date, Respondent has not set a date for a hearing on said application, nor responded to Relator's letter of inquiry.

## ARGUMENT

RELATOR HAS VIOLATED ARTICLE 11.10 AND 11.11

OF THE TEXAS CODE OF CRIMINAL PROCEDURE

Respondent is in violation of Article 11.10 of the TCCP for failing to appoint a time to examine Relator's cause. TCCP, Article 11.10 states:

"When motion has been made to a judge under the circumstances set forth in the preceding Articles, he shall appoint a time when he will examine the cause of the applicant, and issue the writ returnable at that time, in the county where the offense is charged in the indictment or information to have been committed. He shall also specify some place in the county where he will hear the motion."

It has been over one hundred and fifty days since the application was initially filed with no reply from Respondent. This prolonged delay compounds hardships upon Relator and further frustrates the relief sought through habeas corpus undermining its value as a safeguard against constitutional infringements. Relator is confined as a result of a parole revocation stemming from a Class B misdemeanor.

Additionally, Article 11.11 of the TCCP states:

"The time so appointed shall be the earliest day which the judge can devote to hearing the cause of the applicant."

A time has not been appointed nor a hearing devoted to the cause of the Respondent.

4

On July 31, 2017, Respondent was served a letter of inquiry requesting a status update regarding Relator's application for writ of habeas corpus. See Appendix, Exhibit 2. To date, no response has been filed with Relator regarding his application for writ of habeas corpus. Ironically, one of the grounds for relief is a violation of Relator's right to a speedy trial. Here, again, Respondent fails to take decisive action when appropriate or ordered by statute. Relator languishes in a prison cell needlessly due to this inaction.

## PRAYER

Wherefore, PREMISES CONSIDERED, Relator, Benjamin Elias, pro se, respectfully requests the Court order Respondent to conduct said hearing compliant with statute or that the relief sought in Relator's Application for Writ of Habeas Corpus be granted by this honorable Court.

Respectfully,

Benjamin Elias, pro se
TDCJ-ID No. 819778
O.B. Ellis Unit
1697 FM 980
Huntsville, Texas 77343.

5

## CERTIFICATION

I, Benjamin Elias, Relator, pro se, hereby certify that I have reviewed the petition and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record to the best of my knowledge.

My name is Benjamin Elias, my date of birth is April 30th, 1979, and my inmate identifying number is 819778. I am presently incarcerated in the O.B. Ellis Unit in Walker County, Huntsville, Texas 77343. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 31st day October 2017.

_Benjamin Elias_
Benjamin Elias, pro se.

## APPENDIX

EXHIBIT 1

Relator's Original Writ of Habeas Corpus with Certified Mail Card and

Return Receipt.

EXHIBIT 2

Letter of Inquiry to Respondent with Certified Mail Card and Return Receipt.

**EXHIBIT 1**

8



USPS TRACKING #

9590 9402 2499 6306 9482 53

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

SAN ANTONIO TX 750
...DISTRICT...
15 MAY 2017 PM 3 L

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Benjamin Elias
TDCT-ID No. 819778
O.B. Ellis Unit (D-12-26)
1697 FM 980
Huntsville, Texas 77343

D2 # 26

77343—

---

SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

BEXAR COUNT DISTRICT CLERK
JUSTICE CENTER TOWER
300 DOLOROSA ST., STE 217
SAN ANTONIO, TEXAS 78205

9590 9402 2499 6306 9482 53

2. Article Number (Transfer from service label)

7013 1710 0001 0996 8447

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery
_____                         5/15/17

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...il
☐ ...il Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PS Form 3811, July 2015 PSN 7530-02-000-9053



**Certified Mail Provides:**

- A mailing receipt
- A unique identifier for your mailpiece
- A record of delivery kept by the Postal Service for two years

*Important Reminders:*

- Certified Mail may ONLY be combined with First-Class Mail₅ or Priority Mail₅
- Certified Mail is *not* available for any class of international mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a *Return Receipt* may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS₅ postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement "*Restricted Delivery*".
- If a postmark on the Certified Mail receipt is desired, please present the article at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, August 2006 *(Reverse)* PSN 7530-02-000-9047

WRIT #2704

COUNTY OFFICE
...HOFF
...CLERK BEXAR CO


Cause No.: Not Yet Assigned

2017 MAY 16 P 2: 26

427052

Ex parte

Benjamin Elias

§ THE COUNTY COURT OF LAW
§
§ OF BEXAR COUNTY, TEXAS
§
§ 12TH JUDICIAL DISTRICT

## APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **Benjamin Elias,** [hereinafter referred to as Applicant] pro se, in the above-captioned cause and pursuant to **Article 11.09** of the **Texas Code of Criminal Procedure** and **Article 5, Section 8** of the **Texas Constitution** would show the Court the following:

## Procedural History

### I.

Applicant was charged by information with driving wh... ...xicated, alleged to have been committed in Bexar County, Texas on or a... May 24th, 2013. See **Clerk's Record [CR]** 8-9. Applicant plead not guilty, and a jury found him guilty of the charged offense. **State v. Elias,** Cause No. 427052 (12th Cty Ct., Bexar Cty., Tex. June 13, 2014); see 3 **Reporter's Record [RR]** 5; 5 RR 41 and CR 49. The trial court assessed punishment of six months' confinement in jail, a $2,000 fine and court costs of $492.00. See CR 49. Applicant filed a notice of appeal.

-1-

## II.

Applicant filed an appeal with the Fourth Circuit Court of Criminal Appeals for Texas. See **Elias v. State**, Cause No. 04-14-00498-CR. Applicant's conviction was affirmed on June 3, 2015. Subsequently, a Petition for Discretionary Review was filed with the Texas Court of Criminal Appeals. See **Elias v. State**, PD-0820-15. The Court issued an order refusing discretionary review February 10, 2016.

## Jursidiction

### III.

Applicant seek relief under this writ in accordance with **Article 5, Section 8, of the Texas Constitution** and **Article 11.09 of the Texas Code of Criminal Procedure. Article 5, Section 8, of the Texas Constitution** provides the following:

> "District Court jurisdiction consists of exclusive, appellate and original jurisdiction of all actions, proceedings and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by the Constitution to issue writs necessary to enforce their jurisdiction. The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioner's Court, with such exceptions and under such regulations as may be prescribed by law." (Emphasis added).

Similarly, **Article 11.09 of the Texas Code of Criminal Procedure** provides in part that:

> "If a person is confined on a charge of misdemeanor, he may apply to the county judge of the county in which the misdemeanor is charged to have

-2-

been committed, or if there be no county judge in said county, than to the county judge whose residence is nearest to the courthouse of the county in which the applicant is held in custody."

## IV.

Applicant is unlawfully restrained of his liberty as a collateral consequence of the above-referenced misdemeanor charge, thus making §11.09 of the TCCP applicable to his case. See **State v. Collazo**, 264 S.W.3d 121 (App. 1 Dist. 2007), rehearing overruled, petition stricken 2008 WL 2223903, petition for discretionary review refused. At the time of said charge, Applicant was on parole for an unrelated charge. See **State v. Elias**, Cause No. 970D11232, 243rd Judicial District Court of El Paso County, Texas, final judgment April 12, 2001. As a collateral consequence of his arrest for this misdemeanor charge, his parole was revoked. He is currently confined to the Texas Department of Criminal Justice—Institutional Division due to this parole revocation.

## Argument and Authority
### V. Ineffective Assistance of Counsel

Applicant's first assertion for relief is ineffective assistance of counsel pursuant to the **Sixth** and **Fourteenth Amendments** of the **United States Constitution** and **Article I, Section 10** of the **Texas Constitution**.

To establish ineffective assistance of counsel, an applicant must show that defense counsel's assistance "fell below an objective standard of reasonableness" and thereby prejudiced applicant's defense. **Strickland v. Washington**, 466 U.S. 668, 687-88 (1984); accord **Thompson v. State**, 9 S.W.3d 808, 812 (Tex.Crim.App.

-3-

1999). To make this showing, the applicant must prove that defense counsel's performance was (1) deficient, and (2) that the deficient performance prejudiced the applicant. **Strickland**, 466 U.S. at 687; **Thompson**, 9 S.W.3d at 812.

A claim of ineffective assistance of counsel "must be firmly founded in the record" and the claim is reviewed against "a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." **Thompson**, 9 S.W.3d at 813. To do so, the record must affirmatively demonstrate the alleged ineffectiveness." **Id.**

To establish prejudice, the applicant must show that there is a reasonable probability that but for defense counsel's unprofessional error, the outcome of the trial would have been different. **Hernandez v. State**, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986)(qu...g **Strickland**, 466 U.S. at 694). A reasonable probability in this context means that there is sufficient probability "to undermine confidence in the outcome" of the trial. **Id.** (quoting **Strickland**, 466 U.S. at 694). Applicant presents three areas where trial counsel was ineffective. Trial counsel was invited to respond to each allegation. See **Exhibit A**.


**A. Failure to conduct an independent investigation.**


Applicant's trial counsel, Mr. Antonio Jimenez III, failed to conduct an adequate pretrial investigation, thus failing to subject the prosecution's case to meaningful adversarial testing. "It is fundamental that an attorney must have a firm command of the facts of the case as well as the law before he can render reasonably effective assistance of counsel...A natural consequence of this notion is that counsel also has a responsibility to seek out and interview

-4-

potential witnesses and failure to do so is to be ineffective, if not incompetent, where the result is that any viable defense available to the accused is not advanced." **Ex parte Lilly**, 656 S.W.2d 490, 493; 1983 Tex.Crim.App.LEXIS 1155; see also **Compton v. State**, 202 S.W.3d 416, 419 (Tex.App.—Tyler 2006). Specifically, counsel failed to conduct an investigation in order to subject the prosecution's case to meaningful adversarial testing. When the foundation of the prosecution's case is based upon circumstantial evidence, rebuttal evidence and exposing discrepancies in "cover officer's" testimony are paramount to staging any viable defense. Mr. Jimenez's ineffectiveness falls into three broad categories: failure to subject circumstantial evidence to meaningful cross-examination, failure to introduce evidence and providing erroneous legal advice.

In order to secure a conviction for driving while intoxicated, the prosecution must prove six elements of the charge: (1) a person; (2) is intoxicated; (3) at the time of; (4) operating; (5) a motor vehicle; (6) in a public place. See VTCA, **Penal Code §49.04(a)**; **Chaloupka v. State**, 20 S.W.3d 172, pet. for discretionary review refused (Tex.App.—Waco 1999). Instead of establishing each element of the charge, the prosecution has utilized circumstantial evidence and shoddy testimony to support its case. Mindful that circumstantial evidence can be used to support a conviction, it is not carte blanche to forego empirical evidence or the lack thereof. See **Kuciemba v. State**, 310 S.W.3d 460 (necessitating a temporal link between the time of the accident and arrival of the officers at the scene). Beyond circumstantial evidence, the prosecution never established Applicant exercised control over or operated the motor vehicle. The prosecution, instead, utilizes suspect testimony upon which to base its case-in-chief.

Specifically, officers guesstimate the time of the accident. Officer Flores, one of the last officers to arrive at the scene submitted the crash report and presented the following testimony upon cross-examination by Mr. Jimenez:

Q: (By Mr. Jimenez) Officer, do you know when the accident actually occurred?

A: As far as like, the exact time?

Q: Time sequence.

A: The time I put on my report was 3:32, so I will probably say you'd— probably a few minutes before that—

Q: All right.

A: 3:30.

See 3 RR 35. Officer Flores was unsure of the time of the accident as he did not witness it occur.

Next, Officer Gary Nel, the first officer on the scene testifies to not having seen that accident occur either. Upon examination by state prosecutor Matthew Ludowig, Mr. Nel stated the following:

Q: Okay. Now, this is important. Now. Officer Nel, did you physically see the defendant driving his vehicle?

A: No, I did not.

See 3 RR 45-46. Officer Nel did not witness the accident nor could he provide an accurate time outside of speculation. Speculation which "Conveniently" supports the prosecution's alleged sequence of events.

-6-

A review of "Calls for Service" to the San Antonio Police Department that night paint a different picture. See **Exhibit 9**. The accident was first reported at 2:02am—over an hour before officers "happened to roll up."

The odds of a San Antonio police officer coincidentally "rolling up" on the scene of an accident immediately after it happened are highly improbable. In fact, the sequence of events proposed by the prosecution is inaccurate. Their case posits just enough fabricated circumstantial links to string together a conviction. The sheer area patrolled by a single officer each night belies this convenient coincidence. Common sense aside the "Calls for Service" that night contradict the claim made by Officer Nel.

Had an independent investigation been conducted by counsel for the defense, the "Calls for Service" record would have been discovered before trial and available as rebuttal evidence casting a formidable shadow upon the officer's credibility and the prosecution's case. Instead, Mr. Jimenez went into trial ill-prepared to defend or defeat the prosecution's argument for circumstantial evidence. Each subsequent ground is effected to some degree by pretrial preparation or lack thereof.

The third example regarding erroneous legal advice will be expounded upon in subsection C.


**B. Failure to pursue pretrial motions.**


Applicant was denied the effective assistance of counsel because trial counsel failed to pursue a pre-trial motion to suppress evidence resulting from his unlawful arrest. See CR 30-33. Applicant's DWI arrest was a direct result of his conversation with officers before the reading of his Miranda rights. Additionally, officer's suspicion that Applicant was intoxicated was in error

-7-

due to the circumstances surrounding the scene of the crash. Thus, the intoxylizer results should also be excluded from the record.

To show that counsel was ineffective for failing to pursue the motion to suppress evidence, Applicant must prove that the trial court would have granted the motion. **Jackson v. State**, 973 S.W.2d 954, 957 (Tex.Crim.App. 1998); see **Roberson v. State**, 852 S.W.2d 508, 510-12 (Tex.Crim.App. 1993)(unless there is a showing that a pretrial motion had merit and that a ruling on the motion would have changed the outcome of the case, counsel will not be ineffective for failing to assert the motion). In other words, Appellant must defeat the presumption of proper police conduct. **Jackson**, 973 S.W.2d at 957. As will be shown, effective counsel would have defeated that presumption by showing that the arrest based on field sobriety at the scene of the accident was unreasonable and made as a result of the officer's testimony interpreting shock and confusion as evidence of intoxication.

The reviewing court may consider only the information actually known by or available to the officer at the inception of the stop. **State v. Duran**, 396 S.W.3d 563, 569 (Tex.Crim.App. 2013). Information that the officer acquired or noticed after a detention or arrest cannot be considered.-id. (citing **Amores v. State**, 816 S.W.2d 407, 415 (Tex.Crim.App. 1991)("In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officers at the time of arrest; subsequently discovered facts or later-acquired knowledge, like the fruits of a search, cannot retrospectively serve to bolster probable cause at the time of arrest.")). This is because "[a] determination is either good or bad at the moment it starts." **Duran**, at 569. Thus, the onboard, camera footage and intoxylizer results should not be considered.

-8-

Furthermore, the admission of the onboard, camera footage undermines Applicant's **Fifth Amendment** right against self-incrimination. He was not Mirandized until after arrest and placement in handcuffs. 4 **RR** 12. Any statements prior to the reading of the Miranda rights are not admissible. Mr. Jimenez confuses the sequence of events and describes this dialogue as voluntary. 4 **RR** 45. This was not the case, though, and Applicant was not admonished of his rights to have voluntarily waived them. By officer's testimony, their main purpose that night was to look for "evidence of intoxication." 4 **RR** 60. Consequently, the arresting officers' overriding objective would cause them to compromise legal safeguards. As a secondary safeguard, counsel for defense had opportunities to protest these violations, but failed to do so.

A pretrial motion to suppress is a specialized objection to the admissibility of the designated evidence which may be, but is not required to be resolved prior to trial. Tex. Code **Crim. Proc. Ann. art. 28.01** (West 2009); **Black v. State**, 362 S.W.3d 626, 633 (Tex.Crim.App. 2012); **Gutierrez v. State**, 327 S.W.3d 257, 261 (Tex.App.—San Antonio 2010, no pet.). The trial court's pretrial ruling on such a motion to suppress is interlocutory and equally subject to reconsideration and revision during trial as any other ruling on the admissibility of evidence under **Rule 104** of the **Texas Rules of Evidence**. Tex.R.Evid. **104**; **Black**, 362 S.W.3d at 633 (noting court may revisit a ruling under **Rule 104** at its discretion, at any time, during the course of the trial); **Gutierrez**, 327 S.W.3d at 261. Thus, defense counsel could have urged his motion to suppress during trial, but no mention occurred in the record regarding it. It appears counsel was litigating the circumstances surrounding Applicant's arrest, but did not give the trial court a vehicle to rule on this evidence. "There is no

-9-

logical reason or reasonable strategy for counsel's failure to object" to questionable evidence that was the basis for the prosecution's case. See Manefield v. State, 363 S.W.3d 591 (Tex.Crim.App. 2012).

To establish his ineffective assistance claim, Applicant must show that the trial court would have granted a pretrial motion to suppress. Jackson, 973 S.W.2d at 957. Because he has shown that the arrest was without probable cause, based on the officer's subjective belief that Applicant's behavior was a result of intoxication when the officer admitted that those same behaviors were consistent with non-intoxicated behavior, Applicant has categorically defeated the presumption of proper police conduct and shown that a pretrial motion to suppress had merit. Id. Moreover, a ruling on that motion would have changed the outcome of the case. This was a prosecution for DWI; all of the testimony and evidence used to establish the intoxication element of the offense was a direct product of the initial arrest. Without evidence obtained from the arrest, the State would not have secured its conviction.

Certainly, the outcome of the trial would have been different had trial counsel pursued the pretrial motion to suppress evidence. And because the pretrial motion would have determined the outcome of the    in Applicant's favor, there can be no strategic reasons for failing to pursue it.

Additionally, trial counsel failed to pursue a Motion for Speedy Trial. See Section No. VII.


C. Failure to command facts of case or *appropriately* advise client.


In a vein related to ground A, trial counsel failed to command facts relevant to his client's case or advise him appropriately. More specifically,

-10-

the Friday before trial, Mr. Jimenez informed Applicant that the State made an offer for time served in exchange for a plea of guilty in person at the Bexar County Adult Detention Center. He further recommended that Applicant accept the plea agreement since he could be sentenced to upwards of two years' confinement. Counsel's advice was a flagrant misrepresentation of applicable, statutory law. The above-referenced class B misdemeanor carries a statutory, maximum sentence of one-hundred and eighty (180) days' confinement in the county jail. See Vernon's **Texas Penal Code** §§49.04(b) and 12.22(2). "Counsel's representation was below an objective standard of reasonableness. There is no evidence of his consulting the statute." See **Ex parte Battle**, 817 S.W.2d 81, 84. Said advice reflects a failure of trial counsel to prepare for trial and command a firm grasp of the facts of the case as well as the law. See **Diaz v. State**, 905 S.W.2d 302, 307 (Tex.App.—Corpus Christi 1995). Pecuniary interests may have influenced Mr. Jimenez's judgment.

Initially, Mr. Jimenez was paid a two-thousand five hundred (2,500) dollar retainer fee with a verbal agreement for further payment dependent upon the course of the case. Unfortunately, Applicant was arrested the following day and unable to make further payments. Mr. Jimenez was asked by Applicant to withdraw from his case if payment, or lack thereof, created conflict. Trial counsel did not withdraw and contacted Applicant's elderly parents requesting payment. Mr. Jimenez was not compensated beyond the initial retainer fee for his services. Thus, decisions not to prepare, nor appropriately advise his client was not a "'strategic' decision, it was an economic one." See **Ex parte Briggs**, 187 S.W.3d 458, 467(Tex.Crim.App. 2005). Mr. Jimenez wanted to avoid a trial for which he would not be compensated. He has gone to the extent of misrepresenting statutory law to do so.

-11-

D. Failure to advocate on Applicant's behalf undermining the adversarial process.

Trial counsel's actions before, during and after trial reflect an abandonment of the adversarial process constituting a denial of due process. "When one side is unwilling or unlikely to advocate on behalf of his client there is no reason to expect the other side to be willing to reduce whatever adversarial advantage it may already have. Hence without effort on the part of the appellant's attorney to seek possible flaws in the State's case, the prosecutor would not be persuaded to seek less than the asking price, which in most cases exceeds the actual value of the case." See **Mitchell v. State**, 762 S.W.2d 916, 924 (Tex.App.—San Antonio 1989). As demonstrated by subsection B, trial counsel failed to pursue several pretrial motions that possessed the potential to change the outcome of the trial. The case against Applicant consisted of four witnesses for the prosecution versus absolutely none for the defense. The prosecution submitted three exhibits into the record without a single objection from counsel for the defense. See 4 RR      and 75.

Two specific instances reflect abandonment of duty         . One, during his testimony, Officer Nel interjected the damaging characterization that Applicant had a very arrogant stance about himself, to which Mr. Jimenez did not object. 3 RR 57. The interjection of this subjective speculation cast a negative light upon Applicant's character before the jury. Defense counsel allowed the prosecution, through its witnesses, to label Applicant creating a backdrop for framing the jury's attitude towards this case. Once emotionally charged connotations are attached to the proceedings, legal standards are

-12-

replaced by emotional ones. The context of the trial is shifted from one based upon the law to one based upon emotions. Needless to say, subjective characterizations must be restrained to context and not allowed to permeate the trial proceedings which happened in this case.

Secondly, Officer Bandala testified that Applicant was not Mirandized until after he was placed in handcuffs and under arrest. 4 RR 12. Thus, any video footage or dialogue with officer's before that point (which is the majority of the video) is inadmissible before the jury. This footage is the single most damaging evidence introduced by the prosecution. Its admission constitutes a violation of Applicant's Fifth Amendment right against self-incrimination.

Instead of asserting suppression, Mr. Jimenez obfuscates the time the Miranda rights were read. Despite testimony stating that the Miranda rights were read after the colloquy between Applicant and officers, Mr. Jimenez argues for its incorporation into the record as a "voluntary" admission. 4 RR 49. In a striking role reversal, defense counsel ceases to be an advocate for the defense and joins forces with the prosecution. There cannot possibly be any strategic reason for counsel's action.

With no adversarial challenge by defense, there is no reasonable expectation for the prosecution to check itself. In the process, evidence to the contrary is glossed over and unconstitutional methods implemented to secure a conviction. "If counsel fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." See **Mitchell,** n. 1 at 924 (quoting **United States v. Cronic,** 466 U.S. at 659, 104 S.Ct. at

-13-

2407). Thus, the trial results are not reliable due to a break down in the adversarial process.

## VI. Disproportionate punishment.

Applicant has been subjected to cruel and unusual punishment in the form of deliberate indifference and disproportionate punishment under the **Eighth** and **Fourteenth Amendments** to the **United States Constitution**. Specifically, pretrial detention for three hundred and eighty (380) days as a result of a class B misdemeanor awaiting trial constitutes punishment disproportionate to the statutorily, mandated maximum punishment. See **Texas Penal Code §§49.04(b)** and 12.22(2)(punishment for driving while intoxicated, class B misdemeanor, set at confinement in the county jail not to exceed one hundred and eighty days).

Applicant was charged with the class B misdemeanor, driving while intoxicated on May 24th, 2013. That day, he was released on bond. On May 29th, he was arrested on a pre-revocation warrant issued by the Texas Department of Criminal Justice—Pardons and Paroles Division [Parole Division]. Said warrant precluded bond. As a result, Applicant would remain incarcerated until the resolution of the driving while intoxicated charge. He contacted Judge Scott Roberts requesting a trial since the Parole Division refused to lift the pre-revocation warrant until his case was adjudicated. Alternatively, Applicant contacted the Parole Division requesting the warrant be lifted since the Court would not schedule his trial for another several months. Neither the trial judge, nor the Parole Division provided Applicant with any relief.

-14-

The Eighth Amendment's proscription against "cruel and unusual" punishment includes disproportionate punishment. Punishment for a class B misdemeanor is explicitly defined as a period of confinement in the county jail "not to exceed one-hundred and eighty (180) days."-id. Applicant served the maximum statutory punishment twice over, plus twenty days..He was confined for three hundred and eighty (380) days BEFORE adjudication of this case. This is clearly an abrogation of his Eighth Amendment rights.

"When faced with such a categorical challenge, the judiciary, in determining whether the punishment at. issue is grossly disproportionate to the offense, must consider: (1) whether there is a national consensus against imposing the punishment for the offense; (2) the moral culpability of the offender's at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate penological goals." **Meadoux v. State**, 325 S.W.3d 189, 194 (Tex.Crim.App. 2010). The best evidence of a national consensus with respect to the appropriateness of a particular punishment for a particular offense is the legislation enacted by the nation's legislature.-id. In this specific instance, legislation set the appropriate punishment at a term of confinement in the county jail, not to exceed one hundred and eighty days." See **Tex. Pen. Code** §12.22(2).

## VII. Violation of due process.

Applicant's due process rights were contravened by punishment prior to trial. "A detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." **Bell v. Wolfish**, 99 S.Ct. 1861, 1896 (1979).

-15-

Applicant petitioned the Parole Division and Court requesting the pre-revocation warrant be lifted or the misdemeanor adjudicated, respectively. Neither party provided Applicant with relief. This inaction serves as a warning to others who may consider exercising fundamental constitutional rights to proceed with caution.

"The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." **Gregg v. Georgia**, 428 U.S. 153, 193, 96 S.Ct. 2909, 2935 (1976). Applicant exercised his Fifth and Sixth Amendment rights and has been penalized for doing so. "A person on parole for one crime who is arrested for a second crime cannot be punished for the commission of the second crime until he is found guilty of the commission of the second crime." **Hamilton v. Lyons**, 74 F.3d 99, 104. The extended imposition of a blue warrant precluding bond has unequivocably punished and discouraged the exercise of fundamental rights without legitimate counterbalancing penological goals, punishing Applicant PRIOR to trial. There is no way around the injury to Applicant due to disregard for constitutional tenets.

## VIII. Speedy trial violation.

Applicant has been denied his Sixth and Fourteenth Amendment right to a speedy trial. The Sixth Amendment to the United States Constitution, as extended

-16-

to the states through the Fourteenth Amendment, guarantees the criminally accused the right to a speedy trial. See **State v. Rangel**, 980 S.W.2d 840, 843 (Tex.App.—San Antonio 1999). Similarly, the Texas Constitution guarantees the right to a speedy trial. **Tex.Const.art. I, §10."-id**. Applicant spent fourteen (14) months' in the Bexar County Adult Detention Center before his misdemeanor trial. Paradoxically, the misdemeanor pending against him carried a maximum, statutory punishment of six (6) months' confinement in the county jail. See Sections V and VI; see also **Texas Penal Code §§49.04(b)** and **12.22(2)**.

The reviewing court must balance four factors when analyzing the grant or denial of a speedy trial claim. "The factors are: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused." **Stock v. State**, 214 S.W.3d 761, 764 (Tex.App.-Austin 2007)(quoting **Barker v. Wingo**, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

In this case, the delay was fourteen (14) months. Applicant understood the delay to be due to a crowded docket, in part. "Upon a finding that a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay." **Rangel**, at 843. The primary burden is on the State and the trial courts to ensure that defendants are afforded their right to a speedy trial. See CR 10-12, **Ground I** or **Section V**. Counsel for defense failed to pursue these motions. The final factor, or prejudice, is inherent with continued pretrial detention. All four factors are met by Applicant's cause for relief. Relief under this ground calls for reversal of the above referenced cause and dismissal with prejudice. See **Stock**; see also **State v. Guerrero**, 110 S.W.3d 155 (Tex.App.—San Antonio 2003).

## Prayer

Wherefore, PREMISES CONSIDERED, Applicant respectfully prays that this honorable Court set aside the final judgment and sentence in the above-referenced cause and order the conviction for Cause No. 427052 void and null. Applicant also prays for any other relief that this Court deems equitable and necessary.

Respectfully,

Benjamin Elias
TDCJ-ID No. 819778
O.B.Ellis Unit
1697 FM 980
Huntsville, Texas 77343.

## CERTIFICATE OF SERVICE

I, Benjamin Elias, Applicant, pro se, hereby certify that a true and correct copy of the foregoing Applicant's Application for Writ of Habeas Corpus, has been forwarded to the District Attorney of Bexar County, Criminal Justice Center, 101 W. Nueva, San Antonio, Texas 78207 via United States Postal Service, first-class mail, postage prepaid.

Executed on this the 10th day of May 2017.

Benjamin Elias, pro se

-18-

## APPENDIX

1) EXHIBIT A

   Letter dated April 28, 2017 to Mr. Jimenez for adoptive admissions (3 pages)

2) EXHIBIT B

   Calls for Service to the San Antonio Police Department for May 24th, 2013

   (3 pages)

-19-

EXHIBIT A

April 28, 2017
Mr. Antonio Jimenez III
Attorney and Counselor at Law
214 Dwyer, Suite 315
San Antonio, Texas 78204
State Bar No. 10566800.


RE: The State of Texas v. Benjamin Elias; Cause No. 427652; 10th County Court
    of Law, Bexar County, Texas.


DEAR MR. JIMENEZ:


Hello. The reason for this letter is to formally invite you to respond to
claims posited in a writ of habeas corpus. Please take the time to review the
following letter and respond appropriately.

On March 20th, 2013, Benjamin Elias retained your professional assistance
in the above styled cause and parole proceedings with the payment of a twenty-
five hundred (2,500) dollar retainer fee. He had a class B misdemeanor for
driving while intoxicated (DWI) charge pending and parole issues for an
unrelated charge.

On March 25th, Mr. Elias was arrested on a pre-revocation warrant and
confined to the Bexar County Adult Detention Center where he would remain until
the adjudication of this case. On June 14th-18th, 2014, a jury trial was
conducted. The jury found him guilty of the charge and the judge sentenced him
to six months' confinement and a two-thousand (2,000) dollar fine, judgment
satisfied.

Direct appeal was made to the Fourth Court of Appeals for Texas. The sole
ground for relief was ineffective assistance of counsel. Due to an "underdeveloped
record," the appellate court affirmed the trial court's decision. A petition for

-1-

discretionary review was subsequently filed with the Court of Criminal Appeals and refused. Now, a writ of habeas corpus has been prepared and is ready for submission. The majority of the grounds listed in that writ refer to your performance before, and at trial. Please review the following questions and respond to each in turn:

1. What was your reason for not conducting an independent investigation of the prosecutior s case?

2. What was your reason for not withdrawing from this case when asked to do so by your client due to inattention?

3. What is your reason for refusing to surrender Mr. Elias' client file?

4. What was your reason for filing a pre-trial motion to suppress and not obtaining a ruling upon it?

5. What was your strategy in having your client sit in the county jail for over a year on a charge that carried a maximum punishment of six months?

6. What was your reason for not advocating a motion for speedy trial?

7. What was your reason for not having command of the statutes governing your client's case?

8. What was your reason for advising Mr. Elias that he could be sentenced for upwards of two years' confinement for a class B misdemeanor when, by statute, the maximum punishment is six months' confinement?

9. What was your strategy in not objecting to witness's negative characterization of your client?

10. What was your strategy when arguing in favor of the inclusion of dash camera video footage instead of against it?

11. What was your strategy in not preparing for trial nor subjecting the prosecution's case to appropriate adversarial testing?

Mr. Jimenez, you are not obligated to respond to this letter. If you choose not to respond, it will be presumed that you had no reason or trial strategy for engaging in the actions described above.

Further, this correspondence will be included with Applicant's Writ of Habeas Corpus pursuant to Texas Rules of Evidence, 801 (e)(2)(B). Said writ will be submitted in seven calendar days from the date of this mailing, but you are welcomed to respond after this time if need be.

Thank you in advance for your time and consideration of this matter.

Respectfully,

Benjamin Elias
TDCJ-ID No. 619773
O.B. Ellis Unit
1697 FM 980
Huntsville, Texas 77343.

## CERTIFICATE OF SERVICE

I, Benjamin Elias, hereby certify that a true and correct copy of the above request for adoptive admissions has been submitted to Mr. Antonio Jimenez III, 214 Dwyer, Suite 315, San Antonio, Texas 78204 via United States Postal Service, first class mail, certified, return-receipt requested on this the 28th day of April 2017. Return Receipt Requested No. 7013 1710 0000 4068 3126.

Benjamin Elias

-3-

EXHIBIT B

( RESIDENTS ) ( VISITORS ) ( BUSINESS ) ( YOUR GOVERNMENT ) ( GET CONNECTED )
( /RESIDENTS ) ( /VISITORS ) ( /BUSINESS ) ( /GOVERNMENT ) ( /GETCONNECTED )

## SAN ANTONIO POLICE DEPARTMENT

a.Gov Home (/) > SAPD (http://www.sanantonio.gov/SAPD.aspx) > Calls for Service (http://www.sanantonio.gov/SAPD/Calls.aspx)

# CALLS FOR SERVICE

| Export To PDF | Export To Excel | New Search |

REPORT CRITERIA

Start Date: 05/24/2013 End Date: 05/24/2013

Zipcode: 78238 Dispatch Problem Category: Traffic Calls

Council District: - School District: -

Homeowner Association: -

## 23 CALLS FOR SERVICE RETURNED

| INCIDENT NUMBER | CATEGORY | PROBLEM TYPE | RESPONSE DATE | ADDRESS | HOA | SCHOOL DISTRICT | COUNCIL DISTRICT | ZIPCODE |
|---|---|---|---|---|---|---|---|---|
| SAPD-2013-0484642 | Traffic Calls | Traffic Related | 5/24/2013 12:13:21 AM | 5900-5985 EXCHANGE PKWY | | North Side ISD | 7 | 78238 |
| SAPD-2013-0484743 | Traffic Calls | DWI | 5/24/2013 12:58:25 AM | BANDERA RD / NW LOOP 410 | | North Side ISD | 0 | 78238 |
| SAPD-2013-0484809 | Traffic Calls | Major Accident | 5/24/2013 1:27:49 AM | 2800 Cinema Rdg | Thunderbird Hills | North Side ISD | 6 | 78238 |
| SAPD-2013-0484880 | Traffic Calls | Traffic Related | 5/24/2013 2:02:26 AM | WB NW LP 410 OFRP EXCHANGE PY | | North Side ISD | 0 | 78238 |
| SAPD-2013-0484965 | Traffic Calls | Traffic Related | 5/24/2013 2:49:47 AM | 7032-7076 NW LOOP 410 EB | | North Side ISD | 6 | 78238 |
| SAPD-2013-0484968 | Traffic Calls | Traffic Related | 5/24/2013 2:53:35 AM | 5900-5985 EXCHANGE PKWY | | North Side ISD | 7 | 78238 |
| SAPD-2013-0485013 | Traffic Calls | Minor Accident | 5/24/2013 3:32:39 AM | Nw Loop 410 / Exchange Pkwy | | North Side ISD | 7 | 78238 |
| SAPD-2013-0485014 | Traffic Calls | Minor Accident | 5/24/2013 3:32:50 AM | Nw Loop 410 Wb / Wb Nw Lp 410 Ofrp Bandera Rd | | North Side ISD | 7 | 78238 |
| SAPD-2013-0485918 | Traffic Calls | Traffic Related | 5/24/2013 11:52:42 AM | Nw Loop 410 Wb / Culebra Rd | | North Side ISD | 6 | 78238 |
| SAPD-2013- | Traffic | Abandoned | 5/24/2013 | 6000 Seacroft Dr | | North Side | 6 | 78238 |

Copyright © 2013 City of San Antonio

# City of San Antonio

## San Antonio Police Department Calls For Service Report

Report Generated: 7/14/2014   12:45:53PM

**REPORT CRITERIA**

| | |
|---|---|
| Start Date: 05/24/2013 | End Date: 05/24/2013 |
| Zipcode: 78238 | Dispatch Problem Category: Traffic Calls |
| Council District: | School District: |
| Homeowner Association: | |

RECORDS RETURNED:    23

| Incident Number | Category | ProblemType | Response Date | Address | HOA Name | SchoolDistrict | Council District | Zipcode |
|---|---|---|---|---|---|---|---|---|
| SAPD-2013-0484642 | Traffic Calls | Traffic Related | 5/24/2013  0:13:21 | 5900-5985 EXCHANGE PKWY | | North Side ISD | 7 | 78238 |
| SAPD-2013-0484743 | Traffic Calls | DWI | 5/24/2013  0:58:25 | BANDERA RD / NW LOOP 410 | | North Side ISD | 0 | 78238 |
| SAPD-2013-0484809 | Traffic Calls | Major Accident | 5/24/2013  1:27:49 | 2800 Cinema Rdg | Thunderbird Hills | North Side ISD | 6 | 78238 |
| SAPD-2013-0484880 | Traffic Calls | Traffic Related | 5/24/2013  2:02:26 | WB NW LP 410 OFRP EXCHANGE PY | | North Side ISD | 0 | 78238 |
| SAPD-2013-0484965 | Traffic Calls | Traffic Related | 5/24/2013  2:49:47 | 7032-7076 NW LOOP 410 EB | | North Side ISD | 6 | 78238 |
| SAPD-2013-0484968 | Traffic Calls | Traffic Related | 5/24/2013  2:53:35 | 5900-5985 EXCHANGE PKWY | | North Side ISD | 7 | 78238 |
| SAPD-2013-0485013 | Traffic Calls | Minor Accident | 5/24/2013  3:32:39 | Nw Loop 410 / Exchange Pkwy | | North Side ISD | 7 | 78238 |
| SAPD-2013-0485014 | Traffic Calls | Minor Accident | 5/24/2013  3:32:50 | Nw Loop 410 Wb / Wb Nw Lp 410 Ofrp Bandera Rd | | North Side ISD | 7 | 78238 |
| SAPD-2013-0485918 | Traffic Calls | Traffic Related | 5/24/2013 11:52:42 | Nw Loop 410 Wb / Culebra Rd | | North Side ISD | 6 | 78238 |
| SAPD-2013-0486803 | Traffic Calls | Abandoned Vehicle | 5/24/2013 15:41:47 | 6000 Seacroft Dr | | North Side ISD | 6 | 78238 |
| SAPD-2013-0486866 | Traffic Calls | Traffic Related | 5/24/2013 16:00:57 | Callaghan Rc / Culebra Rd | | North Side ISD | 6 | 78238 |
| SAPD-2013-0487008 | Traffic Calls | Minor Accident | 5/24/2013 16:41:27 | Nw Loop 410 Wb / Ingram Rd | | North Side ISD | 7 | 78238 |
| SAPD-2013-0487011 | Traffic Calls | Major Accident | 5/24/2013 16:42:19 | Nw Loop 410 / Ingram Rd | | North Side ISD | 7 | 78238 |
| SAPD-2013-0487203 | Traffic Calls | Minor Accident | 5/24/2013 17:37:40 | Nw Loop 410 / Culebra Rd | | North Side ISD | 6 | 78238 |

| Incident Number | Category | ProblemType | Response Date | Address | HOA Name | SchoolDistrict | Council District | Zipcode |
|---|---|---|---|---|---|---|---|---|
| SAPD-2013-0487267 | Traffic Calls | Minor Accident | 5/24/2013 17:58:42 | 6300 Nw Loop 410 | | North Side ISD | 7 | 78238 |
| SAPD-2013-0487540 | Traffic Calls | Traffic Related | 5/24/2013 19:08:54 | Nw Loop 410 / Ingram Rd | | North Side ISD | 7 | 78238 |
| SAPD-2013-0487575 | Traffic Calls | Minor Accident | 5/24/2013 19:20:06 | Nw Loop 410 Wb / Bandera Rd | | North Side ISD | 0 | 78238 |
| SAPD-2013-0487631 | Traffic Calls | Officer Traffic Stop | 5/24/2013 19:34:44 | ALAMO DOWNS PKWY / NW LOOP 410 | | North Side ISD | 6 | 78238 |
| SAPD-2013-0487640 | Traffic Calls | Minor Accident | 5/24/2013 19:38:37 | 5900 Bandera Rd | | North Side ISD | 7 | 78238 |
| SAPD-2013-0487790 | Traffic Calls | DWI | 5/24/2013 20:26:10 | Nw Loop 410 Wb / Culebra Rd | | North Side ISD | 6 | 78238 |
| SAPD-2013-0488037 | Traffic Calls | Traffic Related | 5/24/2013 21:53:48 | Nw Loop 410 Wb / Culebra Rd | | North Side ISD | 6 | 78238 |
| SAPD-2013-0488095 | Traffic Calls | Accident Private Property | 5/24/2013 22:14:39 | Still Brook / Timberhill Dr | | North Side ISD | 7 | 78238 |
| SAPD-2013-0488237 | Traffic Calls | Minor Accident | 5/24/2013 23:08:19 | Ingram Rd / Nw Loop 410 Wb | | North Side ISD | 7 | 78238 |

EXHIBIT 2

38

July 31, 2017
Hon. Judge Scott Roberts
Presiding Judge
County Court 12
300 Dolorosa, 2nd Floor
San Antonio, TX. 78205.


RE: Trial Cause: The State of Texas v. Benjamin Elias;
    Trial Cause No.: 427052;
    Writ: Ex parte Benjamin Elias;
    Writ No.: 2704.


DEAR JUDGE ROBERTS:


    GREETINGS. The reason for this letter is to inquire as to the status of

the above-referenced cause. Please advise me appropriately regarding this matter.

    Should you have any questions or need additional information, do not

hesitate to contact me at the address listed below. Thank you in advance for

your time and consideration of this matter.


                        Respectfully,

                        *Benjamin Elias*

                        Benjamin Elias, pro se
                        TDCJ-ID No. 819778
                        O.B. Ellis Unit
                        1697 FM 980
                        Huntsville, TX. 77343.


Certified Mail Return Receipt No. 7013 1710 0001 0996 8454.


cc.: file.



USPS TRACKING #

9590 9402 2499 6306 9482 46

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

DB# 26

• Sender: Please print your name, address, and ZIP+4® in this box•

Benjamin Elias
TDCJ-ID No.819778
O.B. Ellis Unit (D-12-26)
1697 FM 980
Huntsville, Texas 77343



**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

819778 Elias, Benjamin

| | | |
|---|---|---|
| Postage | $ | 0.49 |
| Certified Fee | | 3.35 |
| Return Receipt Fee (Endorsement Required) | | 2.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.59 |

Sent To
JUDGE SCOTT ROBERTS
Street, Apt. No.; or PO Box No. 300 DOLOROSA, 2nd FLOOR
City, State, ZIP+4
SAN ANTONIO, TEXAS 78205

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hon. Judge Scott Roberts
Presiding Judge
County Court 12
300 Dolorosa, 2nd Floor
San Antonio, TX. 78205

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____                    ☐ Agent
                            ☐ Addressee
B. Received by (Printed Name)      C. Date of Delivery
                                   8/3/17
D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No